**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

DAVID WATKINS, and
MARCIA WATKINS,
*on behalf of themselves and*
*all others similarly situated*,

    Plaintiffs,

v.                                                            Civil Action No. _____

OVERSTOCK.COM, INC.,

SERVE:      Corporation Service Company, RA
               100 Shockoe Slip Fl 2
               Richmond, Virginia 23219-4100

JEFFCO FIBRES, INC.,

SERVE:      Blanch Lonstien
               12 Park St
               Webster, MA 01570-2888,

VENTEX, INC.

SERVE:      Harrison R. Murphy, RA
               101 Executive Drive, Suite H
               Sterling, Virginia 20166-0000

    Defendants.

## CLASS ACTION COMPLAINT

       COME NOW the Plaintiffs, David Watkins and Marcia Watkins, on behalf of themselves

and all other similarly situated, by counsel, and as for their Class Action Complaint, pursuant to

Rule 23 of the Federal Rules of Civil Procedure, against Defendants Overstock.com, Inc., Jeffco

Fibres, Inc., and Ventex, Inc., they state as follows:

## NATURE OF ACTION

1.      Defendants manufactured, marketed and sold a mattress to Mr. and Mrs. Watkins and thousands of other consumers, falsely representing that it was natural and hypoallergenic. In fact, the mattress sold to the Plaintiffs and other consumers like them contained health-threatening fiberglass, a problem non-natural component.

2.      Defendants falsely represented the mattress contained an inner latex component that is "easy to clean" along with an outer, zippered cover and no warning not to unzip the cover.

3.      The presence of the fiberglass was discoverable only after purchase and use of the mattress.

4.      Plaintiffs bring this class action under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–2312, as well as upon related state laws seeking actual, statutory and punitive damages.

## JURISDICTION & VENUE

5.      This Court has jurisdiction over this case action because it arises between Plaintiffs, citizens of Virginia, and Overstock and Jeffco, each a citizen of a different state. *See* 28 U.S.C. § 1332(a). There is more than $75,000 in controversy generally. In addition, the Virginia Consumer Protection Act ("VCPA"), Virginia Code. §§ 59.1-196–59.1-207, permits awards of three times actual damages for willful violations as well as attorneys' fees. VA. CODE ANN. § 59.1-204.A, B. Such amounts are included in the amount-in-controversy calculation.

6.      Plaintiffs also brings this action with jurisdiction under the MMWA pursuant to 15 U.S.C. § 2310(d)(3), as they have suffered actual damages greater than $50,000.

7.     Plaintiffs bring their claims on behalf of a putative Class as defined below.  This Court has jurisdiction over such action pursuant to 28 U.S.C. § 1332(d)(2) as: (1) there are at least 100 consumers in states other than Utah and Massachusetts who have purchased the defective product from Defendants during the class period; (2) those consumer class members all may assert their collective claims for damages, which exceed $5,000,000; and (3) those class members are all diverse as to Utah-domiciled Overstock and the Massachusetts-domiciled Jeffco.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendants do business here, and caused the sale of the defective product here. All events regarding the Plaintiffs and all of their damages occurred here.

## PARTIES

9.     Plaintiff David Watkins is a natural person and a "consumer" as defined by 15 U.S.C. § 2301.

10.     Plaintiff Marcia Watkins is a natural person and a "consumer" as defined by 15 U.S.C. § 2301.

11.     Defendant Overstock is foreign corporation that does business nationwide through their online website. Overstock is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301.

12.     Defendant Jeffco is a foreign corporation that manufactures mattresses, including the one that is the subject of this litigation. Jeffco is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301.

13.     Defendant Ventex is a corporation that manufactures mattress sock covers, including the one that is the subject of this litigation. Ventex is a "supplier" and "warrantor" as defined by 15. U.S.C. § 2301.

## STATEMENT OF FACTS

14.     On around August 4, 2014, Plaintiffs David and Marcia Watkins purchased the "Select Luxury E.C.O. Choice of Firmness 10-inch Natural Latex Hybrid Mattress" (the "Mattress") from Defendant Overstock.

15.     The Mattress was manufactured by Defendant Jeffco as comprising three components: (i) an inner flammable hybrid foam core; (ii) an inner fiberglass fire retardant barrier sock ("fiberglass sock"); and (iii) an outer zippered concealing cover ("zippered cover").

16.     The included a fiberglass sock was manufactured by Defendant Ventex.

17.     Upon information and belief, Defendant Ventex sold the fiberglass sock to Defendant Jeffco, and Defendant Jeffco sold its mattress to Defendant Overstock to be resold as a product of Overstock's "Select Luxury" brand.

18.     Overstock then sold the entire three-part mattress as a single, unified product.

19.     On its website, Defendant Overstock represented that the Mattress was "natural" and "hypoallergenic."

20.     Merriam-Webster's Dictionary defines the word "natural" as: "existing in or produced by nature: not artificial."

21.     Merriam-Webster's Dictionary defines the word "hypoallergenic" as: "having little likelihood of causing an allergic response."

22.     The Plaintiffs purposely chose the "hypoallergenic" option based on Defendant Overstock's express representation that the mattress's properties were such that it was beneficial to those with breathing difficulties.

23.     The Ventex sock cover included in this product was, in fact, composed of fiberglass as its primary component, which is a known among other things to be a breathing irritant.

24.     On its website, Defendant Overstock represented that the Mattress contains an "all-natural Dunlop latex layer [that] is durable and 'easy to clean.'"

25.     The supposed "easy to clean" latex foam portion of the inner core is positioned inside the fiberglass sock.

26.     The zippered outer cover is provided outside both the alleged "easy to clean" latex foam layer and the fiberglass sock, with the fiberglass sock positioned between the inner latex core portion and the outer zippered cover.

27.     The zippered outer cover and information provided to the customer fails to warn against unzipping the outer cover.

28.     The zippered outer cover in combination with express suggestion to clean the latex core, exposes the customer to danger.

29.     The express statement that the mattress is "easy to clean" is fraudulent.

30.     On around November 24, 2019, the Plaintiffs attempted to remove the zippered cover of the Mattress to address indentations and lumps of an unknown source that had been spreading and worsening, causing them discomfort.

31.     The Plaintiffs completely unzipped the outer cover of the Mattress and flipped the Mattress over in order to remove the cover.

32.     Upon removal of the zippered mattress cover, a large plume of fiberglass dust from within the cover became airborne and covered the Plaintiffs and surfaces of their home.

33.     This large cloud of dust released from the mattress contained such a large volume of fiberglass material that the Plaintiffs were later able to observe inch long strands in their bedroom and throughout locations in their home.

34.     The fiberglass particles penetrated the HVAC system and were subsequently dispersed throughout the Plaintiffs' entire home.

35.     The Plaintiffs immediately returned the zippered cover to the mattress.

36.     The released, loose fiberglass particles traveled through the HVAC system and by contact with family members living in the home and became thoroughly and irremovably embedded in fabrics, woven, wicker or other similar matrix items throughout the entirety of Plaintiffs' home, to include clothing, drapery, furniture, carpeting, and innumerable other items.

37.     Shortly thereafter, when Plaintiffs returned to their now darkened bedroom, they were able to notice fibers "sparkling" throughout the entirety of the room when a small light was turned on.

38.     The Plaintiffs and their two small children experienced acute symptoms that included intense itchiness all over their skin, difficulty breathing, irritation of the mouth, nose and throat, and intense eye itchiness.

39.     As the symptoms intensified, the Plaintiffs decided to make an effort to remove the mattress from their home so as to mitigate the continued recirculation of the fiberglass particles through their home.

40.     In order to do so, they were forced to drag the large, cumbersome, and now contaminated mattress out of their third-floor master bedroom, down through the house and finally into the basement garage.

41.     After they moved the mattress, Plaintiff David Watkins experienced immediate physical symptoms of nausea and many sessions of prolonged vomiting.

42.     He also suffered an extreme, acute and debilitating anxiety attack, including dizziness, shaking and crying uncontrollably.

43.     Along with the physical symptoms caused by the fiberglass, Plaintiff Marcia Watkins also experienced intense stress and mental suffering as she witnessed her husband's extreme anxiety attack, his uncontrollable vomiting, and her two children struggling with the irritation from the fiberglass.

44.     The Plaintiffs then observed that their two-month-old infant was bleeding from the nose.

45.     Plaintiff David Watkins suffered from severe depression and anxiety which physically manifested in vomiting, uncontrollable shaking, uncontrollable crying, and lethargy that caused him to stay in bed for prolonged periods.

46.     Plaintiff Marcia Watkins suffered from severe PTSD and anxiety which physically manifested in uncontrollable shaking, shortness of breath, and hot flashes.

47.     Plaintiffs' children also experienced physical sickness, loss of sleep, medical expenses, and similar injuries to those of their parents.

48.     They then fled the home, taking minimal belongings with them.

49.     Between November 25, 2019, and April 30, 2020, the Plaintiffs and their family were displaced from their home during professional fiberglass remediation.

50.     During the months that followed the release of the fiberglass into their home, the Plaintiffs experienced persistent mental strain and exhaustion as they attempted to find shelter (initially in a hotel and later an unfurnished apartment), acquire basic hygiene and clothing

necessities, continue working, caring for their young children, and coordinating the restoration of their home.

51.     Plaintiff David Watkins continuously suffered from deep depression as a result of this event.

52.     Some days, Plaintiff David Watkins could not get out of the blowup bed that was the extent of their bedroom and living room furniture for months following the loss due to this depression, and he was often racked with uncontrollable bouts of crying.

53.     Plaintiff Marcia Watkins has suffered from PTSD and anxiety attacks, with symptoms including dizziness, shortness of breath, uncontrollable shaking, intense nausea and hot flashes.

54.     The Plaintiffs were forced to repurchase all of their everyday items, as even the clothes on their back were affected by the fiberglass, thus causing them irritation.

55.     In addition to the major psychological damage to their family members and the significant depression, anxiety and mental turmoil that each experienced for months thereafter, the Plaintiffs suffered significant out-of-pocket monetary loss including, but not limited to: the initial stay in a hotel, the prolonged stay in an apartment while maintaining costs associated with their actual home, the costs of their home restoration, the costs of psychiatric care, the costs associated with the kennel and boarding of their pets, the costs associated with an internet provider to allow work from home, the loss of countless articles of clothing, furnishings and personal possessions due to contamination, and the costs associated with replacing indispensable items.

56.     The Plaintiffs experienced an actual out-of-pocket loss of at least $123,733.95, but these expenses continue to accrue and are ongoing.

57.     As of the filing date of this Complaint, more than twelve months after this event, the Plaintiffs' struggle to return their life to normalcy and restore their physical and mental health to the condition that it was in prior to this incident is ongoing.

## CLASS ACTION ALLEGATIONS

58.     The Classes' claims all derive directly from a single course of conduct by the Defendants. The Defendants have engaged in uniform conduct toward the class members. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes.

59.     Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## I.  The Nationwide Consumer Classes

60.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a nationwide Class (the "Nationwide Overstock Class") defined as:

> All persons in the United States who purchased from Defendant Overstock a mattress which contained the same components and coverings as the Mattress Plaintiffs purchased.

Plaintiffs also assert their claims on behalf of a class of purchasers from other than Overstock (the "Nationwide Non-Overstock Class"), defined as:

> All persons in the United States who purchased a mattress with components from Defendants Ventex and Jeffco containing (i) an inner flammable hybrid foam core; (ii) an inner fiberglass fire retardant barrier sock; and (iii) an outer zippered concealing cover.

## II.  The Virginia Consumer Classes

61.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on their own behalves and on behalf of a Class of Virginia consumers (the "Virginia Overstock Class") defined as:

> All persons in the Commonwealth of Virginia who purchased from Defendant Overstock a mattress which contained the same components and coverings as the Mattress Plaintiffs purchased.

Plaintiffs also assert their claims on behalf of a class of Virginia purchasers from other than Overstock (the "Virginia Non-Overstock Class"), defined as:

> All persons in the Commonwealth of Virginia who purchased a mattress with components from Defendants Ventex and Jeffco containing (i) an inner flammable hybrid foam core; (ii) an inner fiberglass fire retardant barrier sock; and (iii) an outer zippered concealing cover.

62.     Excluded from the Classes are Overstock; any affiliate, parent, or subsidiary of Overstock; any entity in which Overstock has a controlling interest; any officer, director, or employee of Overstock; any successor or assign of Overstock; Jeffco; any affiliate, parent, or subsidiary of Jeffco; any entity in which Jeffco has a controlling interest; any officer, director, or employee of Jeffco; any successor or assign of Jeffco; Ventex; any affiliate, parent, or subsidiary of Ventex; any entity in which Ventex has a controlling interest; any officer, director, or employee of Ventex; any successor or assign of Ventex; Counsel for the Plaintiffs or anyone employed by counsel for Plaintiffs in this action and their immediate families; any Judge to whom this case is assigned and his or her immediate family and staff.

63.     This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

64.     **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Upon information and belief, Defendants manufactured, marketed, and sold thousands of Mattresses nationwide and thousands of Mattresses in the Commonwealth of Virginia. Individual joinder of all Class members is impracticable.

65.     Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their custody or control. Plaintiffs anticipate providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

66.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Defendant's uniform conduct, processes and procedures; whether Defendants falsely warranted their products as natural and hypoallergenic; whether Defendants falsely warranted their product as easy to clean; what Defendants knew about the true composition of their products at the time they made such misrepresentations; and whether Defendants knowingly made such misrepresentations to consumers with the intent to deceive.

67.     **Typicality.** Plaintiffs' claims are typical of the other Class Members' claims. As described above, Defendants use common practices and systems in manufacturing and marketing the Mattresses, committing the conduct that Plaintiffs allege damaged him and the Classes. Plaintiffs are entitled to relief under the same causes of action as the other members of the Classes.

Defendants uniformly breached multiple laws and duties by engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

68. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs' interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiffs have retained Counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiffs' Counsel has prosecuted complex class actions across the country, including repeatedly in this District and Division.

69. **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each Class Member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on defects that do not manifest until sometime after a Mattress purchase. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

70. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

71. There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Because Class Members in each

Class that Plaintiffs seek to represent may be unaware that their rights have been violated or, if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding available. To Plaintiffs' knowledge, no other similar actions are pending against Defendants. This forum is appropriate for litigation because Defendants conducts business in this District and the conduct complained-of herein occurred here.

72.     Because of the hidden nature of the defects and Defendants' deliberate concealment of the fact that the Mattress contained fiberglass as a component, Plaintiffs and Class Members could not have discovered the defect any earlier than they did.

### COUNT I:  MAGNUSON-MOSS WARRANTY ACT
### CLASS CLAIM AGAINST ALL DEFENDANTS

73.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 72 as though fully set forth herein.

74.     The Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class.

75.     The Mattresses are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

76.     Plaintiffs and the Class members are the buyers of the Mattresses. They are therefore "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

77.     Defendants are each a "supplier" and/or "warrantor" within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(4)–(5). Defendants are engaged in the business of making consumer products directly or indirectly available to consumers and are obligated under an implied warranty to the Plaintiffs and Class members.

78.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a supplier or warrantor to comply with a written or implied warranty.

79.     Defendants owe the Plaintiffs and other Class Members an implied warranty of merchantability in connection with the purchase of their Mattresses. As part of the implied warranty of merchantability, Defendants warrant that the Mattresses are fit for their ordinary purpose as mattresses in safe condition and substantially free from defects.

80.     Defendants further impliedly warranted that the Mattresses were safe for their use. The dangerous condition—the presence of fiberglass—existed at the time the Mattresses left Defendants' hands.

81.     As described in more detail above, Defendants breached those implied warranties and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Mattresses share the defects in design, manufacture, and marketing. These design defects make the Mattresses unsafe by potentially exposing the user to dangerous fiberglass.

82.     Any efforts by Defendants to limit the implied warranties in a manner that would exclude coverage of the Mattresses is unconscionable, and any such effort to disclaim or otherwise limit liability for the Mattresses is null and void.

83.     Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants, on one hand, and Plaintiffs and the other Class members, on the other.

84.     Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents to establish privity of contract.

85.     Plaintiffs and each of the Class members are intended third-party beneficiaries of contracts between Overstock and the Defendants Jeffco and Ventex.

86.     Plaintiffs and the Class members were not required to give notice to Defendants or to afford Defendants an opportunity to cure their breaches of the implied warranties. Defendants had actual knowledge, or should have known, or were reckless in not knowing, of the defects, but Defendants nonetheless failed to correct the defects prior to the filling of Plaintiffs' Class Action Complaint, thus making formal pre-suit notice unnecessary and futile. Even if notice were deemed to be required, Plaintiffs may proceed prior to affording Defendants a reasonable opportunity to cure until the Court determines their respective capacity pursuant to Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 2310(e).

87.     The amount in controversy of this action exceeds $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.

88.     The Nationwide Class numbers more than 100 persons as to this claim.

89.     Plaintiffs and the Class members seek all damages permitted by law, in an amount to be proven at trial.

90.     Plaintiffs and the Class members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Defendants had actual knowledge, or should have known, or were reckless in not knowing, steps taken by Defendants were inadequate to render the Mattresses safe and merchantable. Plaintiffs thus request payment of all fees and costs necessary to repair the defects. Plaintiffs and other Class members further request re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the defects.

91.     The right of the Plaintiffs and other Class members to recover these expenses as an equitable manner, to put them in the place that they would have been but for Defendants' conduct, presents a common question of law. Equity and fairness require the establishment by Court decree

and administration under Court supervision of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

92.     Further, based on the Defendants' continuing failures to fix the known dangerous defects, Plaintiffs and the other Class members seek as equitable relief under 15 U.S.C. § 2310(d)(1): (a) a declaration that Defendants have not remedied the defects; and (b) injunctive relief in the form of judicial supervision of a process requiring Defendants to fully repair the defects and all damages the defects caused or to refund to Class members the purchase prices of their Mattresses.

93.     In addition, Plaintiffs and Class members are entitled to reasonable attorneys' fees and court costs, including expert witness fees, pursuant to 15 U.S.C. § 2310(d)(2).

94.     Because of the hidden nature of the defect and Overstock's misrepresentations of the quality of the Mattress, Plaintiffs and Class Members could not have discovered the nature of their injury any sooner than they did.

## COUNT II:  BREACH OF EXPRESS WARRANTY
## CLASS CLAIM AGAINST DEFENDANT OVERSTOCK

95.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 94 as though fully set forth herein.

96.     The Plaintiffs bring this Count against Defendant on behalf of members of the Nationwide Consumer Class.

97.     At all times well known to Defendant Overstock, Overstock represented by express warranties that the Mattress was "natural" and "hypoallergenic."

98.     In truth and in fact, Overstock's representations and warranties were false.

99.     By asserting that the Mattress was natural and hypoallergenic in its marketing materials, Overstock caused such statements to be an express warranty that the Mattress possessed such qualities.

100.     Such qualities therefore became part of the basis of the bargain between Overstock and Class Members.

101.     Due to Defendant Overstock's breach of express warranties, Plaintiffs and Class Members suffered actual damages, including paying for the Mattress when they would not have bought it had they known the truth or paying more than they would have had they known the truth, as well as the costs associated with remediating the significant damage caused by the inundation of their home with fiberglass, their stress, aggravation, anger, loss of sleep, and similar facets of actual damages.

102.     Plaintiffs and Class Members are entitled to recover such actual damages from Overstock as set forth herein.

103.     Because of the hidden nature of the defect and Overstock's misrepresentations of the quality of the Mattress, Plaintiffs and Class Members could not have discovered the nature of their injury any sooner than they did.

### COUNT III:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY CLASS CLAIM AGAINST ALL DEFENDANTS

104.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 103 as though fully set forth herein.

105.     Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class.

106.    Defendants are merchants with respect to mattresses and mattress coverings.

107.    At the time of the manufacture, distribution, design, and/or sale of the Mattress, Defendants in their own right and/or by and through their agents, servants, workman, employees and/or engineers acting within the scope of their employment and with the full knowledge and consent of Defendants, impliedly warranted that the Mattress was fit for its ordinary uses and for the particular purpose for which Defendants knew the Mattress was to be used and intended to be used and was of merchantable quality.

108.    The inclusion of fiberglass in the Mattress in the form of a fiberglass sock that was prone to deterioration, a zipper outer cover, and no warning label that the Mattress contained a potentially harmful, non-natural substance presents a product unable to pass without objection in the trade under the description of "natural" or "hypoallergenic."

109.    The Mattress was not of merchantable quality and was unfit and unsafe for its ordinary uses and for the purposes for which it was intended to be used.

110.    The Plaintiffs and Class members suffered actual damages, including paying for the Mattress when they would not have bought it had they known the truth or paying more than they would have had they known the truth, as well as the costs associated with remediating the significant damage caused by the inundation of their home with fiberglass, their stress, aggravation, anger, loss of sleep, and similar facets of actual damages.

111.    Because of the hidden nature of the defect and Overstock's misrepresentations of the quality of the Mattress, Plaintiffs and Class Members could not have discovered the nature of their injury any sooner than they did.

### COUNT IV:  BREACH OF IMPLIED WARRANTY OF FITNESS
### CLASS CLAIM AGAINST ALL DEFENDANTS

112.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 111 as though fully set forth herein.

113.   Plaintiffs bring this Count against Defendants on behalf of members of the Nationwide Consumer Class.

114.   At the time of the manufacture, distribution, design, and/or sale of the Mattress, Defendants in their own right and/or by and through their agents, servants, workman, employees and/or engineers acting within the scope of their employment and with the full knowledge and consent of Defendants, impliedly warranted that the Mattress was fit for the particular purpose of functioning as a mattress.

115.   By virtue of the fact that Defendants advertised and listed the Mattress as natural and hypoallergenic, and setting their website search parameters to bring the Mattress up in a search result for natural and hypoallergenic Mattresses, Defendants were aware that Plaintiffs and the Class Members sought the Mattress for such purpose.

116.   Defendants were likewise aware that Plaintiffs and the Class Members would use the Mattress for this purpose, and that Plaintiffs and the Class Members were relying on Defendants' skill and expertise

117.   The inclusion of fiberglass in the Mattress in the form of a fiberglass sock that was prone to deterioration, a zipper outer cover and no warning label that the Mattress contained a potentially harmful, non-natural substance makes the Mattress unfit for the purpose to which Defendants knew Plaintiffs and Class Members would put it.

118.   Plaintiffs and Class Members did not use the Mattress in any unreasonable or unorthodox way outside of its purpose. They used the Mattress as any ordinary person would use such a product.

119.    Furthermore, the Plaintiffs relied on the expertise of the Defendants, specifically Defendant Overstock, who were in the business of selling mattresses and had specific knowledge of the purpose for which the Mattress would be used.

120.    Plaintiffs suffered actual damages, including paying for the Mattress when they would not have bought it had they known the truth or paying more than they would have had they known the truth, as well as the costs associated with remediating the significant damage caused by the inundation of their home with fiberglass, their stress, aggravation, anger, loss of sleep, and similar facets of actual damages.

121.    Because of the hidden nature of the defect and Overstock's misrepresentations of the quality of the Mattress, Plaintiffs and Class Members could not have discovered the nature of their injury any sooner than they did.

### COUNT V:  VIRGINIA CONSUMER PROTECTION ACT CLASS CLAIM AGAINST ALL DEFENDANTS

122.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 121 as though fully set forth herein.

123.    Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

124.    Defendants are "suppliers" as defined by Virginia Code § 59.1-198.

125.    Defendants misrepresented the Mattress as "natural" and "hypoallergenic."

126.    Fiberglass, by its very nature, is an artificial substance that irritates the lungs, mouth, skin, and eyes of the people that come in contact with it.

127.    Thus, a reasonable person would assume that a "natural" and "hypoallergenic" mattress would not include a non-natural substance like fiberglass.

128.    Defendants knew that representing the Mattress as "natural" and "hypoallergenic" was both misleading and inaccurate, but it sold the Mattress anyway.

129.    As of January 24, 2020, Defendants did not remove or edit its representations that the Mattress was "natural" and "hypoallergenic" on its website.

130.    At the minimum, Defendant Overstock is in violation of Virginia Code § 59.1-200 A5, A6, A8, and A14.

131.    Defendants' actions, as described above, were willful as that term is used in Virginia Code § 59.1-204.

132.    Pursuant to Virginia Code § 59.1-204, Plaintiffs and Virginia Consumer Class Members are entitled to actual damages, including paying for the Mattress when they would not have bought it had they known the truth or paying more than they would have had they known the truth, as well as the costs associated with remediating the significant damage caused by the inundation of their home with fiberglass, their stress, aggravation, anger, loss of sleep, and similar facets of actual damages.

133.    If the Jury determines that Defendant Overstock was willful, they may increase damages to an amount not greater than three times that of the actual damages sustained.

134.    In addition, Plaintiffs and Class members are entitled to reasonable attorney's fees and court costs pursuant to Virginia Code § 59.1-204.

## COUNT VI:  UNJUST ENRICHMENT
## CLASS CLAIM AGAINST ALL DEFENDANTS

135.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 134 as though fully set forth herein.

136.    The Class Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

137.    Plaintiffs and the Virginia Consumer Class members bring this claim to recover the amounts by which Defendants were unjustly enriched by virtue of their tortious or fraudulent conduct.

138.    Plaintiffs and the Virginia Consumer Class members conferred benefits on Defendants. Defendants received a benefit through their unjust conduct by selling the Mattresses, which share the known defects of being manufactured with harmful fiberglass as a key component.

139.    Plaintiffs and the Virginia Class members overpaid for the Affected Mattresses, and the Affected Mattresses' values have diminished.

140.    Given their misconduct in obtaining benefits from Plaintiffs and Virginia Consumer Class Members, it is inequitable for Defendants to retain these benefits.

141.    Plaintiffs and the Virginia Consumer Class members do not have an adequate remedy at law.

142.    As a result of Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

### COUNT VII:  NEGLIGENT DESIGN
### CLASS CLAIM AGAINST ALL DEFENDANTS

143.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 142 as though fully set forth herein.

144.    The Class Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

145.     The Defendants had a duty to design and sell to the Plaintiffs and Class members a product that was of merchantable quality and was fit and safe for its ordinarily uses and the purposes for which it was intended to be used.

146.     The Defendants designed a mattress to include a sock cover that contained fiberglass.

147.     The dangerous or defective condition—the presence of fiberglass—existed at the time the Mattresses left Defendants' hands.

148.     This sock cover was prone to deterioration which would then release the fiberglass into the air.

149.     Fiberglass, by its very nature, is an artificial substance that irritates the lungs, mouth, skin and eyes of the people that come in contact with it.

150.     The design of the Mattress was unreasonably dangerous, in that through ordinary use, microscopic fiberglass particles would be released into the air causing irritation to whomever was sleeping on the Mattress.

151.     The defect existed when the Mattress left Defendant Overstock's hands, and the then-existing defect caused Plaintiffs' and Class Members' injuries by releasing dangerous fiberglass into the air in their homes.

152.     The design of the Mattress was unreasonably dangerous, in that unzipping the sock cover would allow a large plume of fiberglass to invade the consumer's home.

153.     The Plaintiffs and Class members suffered actual damages, including damage to property, injuries to their persons, severe emotional distress and suffering, lost time from employment, inconvenience, costs for alternative housing, that is directly and proximately caused by the negligent design of the Mattress.

## COUNT VIII:  NEGLIGENT MANUFACTURE
## CLASS CLAIM AGAINST ALL DEFENDANTS

154.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 153 as though fully set forth herein.

155.    The Class Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

156.    The Defendants had a duty to manufacture and sell to the Plaintiffs and Class Members a product that was not unreasonably dangerous and would injure them.

157.    The Defendants manufactured a mattress which included a sock cover that contained fiberglass.

158.    The dangerous or defective condition—the presence of fiberglass—existed at the time the Mattresses left Defendants' hands.

159.    This sock cover was prone to deterioration which would then release the fiberglass into the air.

160.    Fiberglass, by its very nature, is an artificial substance that irritates the lungs, mouth, skin and eyes of the people that come in contact with it.

161.    The Defendants did not use reasonable care in manufacturing their Mattress, as the ordinary use of the Mattress would cause the sock cover to deteriorate, allowing fiberglass to escape and cause irritation.

162.    Furthermore, the Defendants did not use reasonable care in manufacturing their Mattress that included a zipper that would allow a large plume of fiberglass to invade the consumer's home if it was unzipped.

163.    These breaches of duty by Defendants caused Plaintiffs' and Class Members' injuries, as set forth herein.

164.    The Plaintiffs and Class members suffered actual damages, including damage to property, injuries to their persons, severe emotional distress and suffering, lost time from employment, inconvenience, costs for alternative housing, that is directly and proximately caused by the negligent design of the Mattress.

## COUNT IX:  NEGLIGENT FAILURE TO WARN
## CLASS CLAIM AGAINST ALL DEFENDANTS

165.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 164 as though fully set forth herein.

166.    The Class Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

167.    The Defendants had a duty to manufacture and sell to the Plaintiffs a product that was of merchantable quality and was fit and safe for its ordinarily uses and the purposes for which it was intended to be used.

168.    Defendants knew or should have known of the dangerous condition—the inclusion of harmful fiberglass as a hidden component of the Mattress—at the time they manufactured the Mattress and coverings.

169.    The dangerous or defective condition—the presence of fiberglass—existed at the time the Mattresses left Defendants' hands.

170.    Furthermore, the Defendants had a duty to warn the Plaintiffs of any product dangers that cause an unreasonable risk of injury or damage.

171.    The fiberglass contained within the Mattress presented a hidden danger to the Plaintiffs and Class members.

172.    Defendants had no reason to know that Plaintiffs or Class Members would discover the dangerous condition.

173.    The Plaintiffs and Class Members were given no warning regarding the risks associated with buying the Mattress, since there was no warning about the fiberglass. This failure to warn was unreasonable given Defendants' knowledge of the dangerous condition and the unlikeliness that Plaintiffs and Class Members would discover it.

174.    Plaintiffs and Class Members therefore had no ability to learn of the defect at a time earlier than when the opened the zippered cover and were inundated with fiberglass.

175.    The Plaintiffs and Class Members suffered actual damages, including damage to property, injuries to their persons, severe emotional distress and suffering, lost time from employment, inconvenience, costs for alternative housing, that is directly and proximately caused by the negligent design of the Mattress.

## COUNT X:  STRICT LIABILITY
## CLASS CLAIM AGAINST ALL DEFENDANTS

176.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 175 as though fully set forth herein.

177.    Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

178.    Defendants designed, manufactured, distributed, supplied and/or otherwise placed into the stream of commerce the Mattress in an unreasonably dangerous and defective condition.

179.    The dangerous or defective condition—the presence of fiberglass—existed at the time the Mattresses left Defendants' hands.

180.    Upon information and belief, the Mattress was in substantially the same condition as when it left the possession and control of Overstock and was defective and unreasonably dangerous by reason of its design, manufacture, and/or assembly.

181.    The damages and injuries to Plaintiffs stated above were caused by the acts and/or omissions of the Defendants by and through their agents, servants, sub-agents and employees, acting in the course and scope of their employment for which the Defendants are liable pursuant to § 402A Restatement (Second) of Torts in one or more of the following ways:

a)    supplying a defectively manufactured and/or designed Mattress;

b)    failing to warn of the defect in the Mattress;

c)    designing, manufacturing, assembling, distributing and/or selling the Mattress with a dangerously defective condition that Defendants knew or should have known subjected the Plaintiffs, Class members, and their property/home to an unreasonable risk of harm and damage;

d)    designing, manufacturing, assembling, distributing and/or selling the Mattress, which subjected the Plaintiffs, Class members, and their property/home to an unreasonable risk of harm and damage;

e)    designing manufacturing, assembling, distributing and/or selling the Mattress which, when used for its intended purpose, created an

f)    unreasonably high risk of releasing fiberglass;

g)    designing, manufacturing, assembling, distributing and/or selling the Mattress that ultimately was defective and subjected the Plaintiffs and their property/home to an unreasonable risk of harm and damage;

h)    failing to provide adequate warnings and/or instructions regarding the unreasonably high risk of releasing fiberglass caused by the design, manufacture and assembly of the Mattress;

i)     failing to provide adequate warning and/or instructions regarding the unreasonably high risk of releasing fiberglass during or following normal use of the Mattress;

j)     failing to design, manufacture, assemble, sell and/or otherwise distribute into the stream of commerce the Mattress in a condition that was safe for all foreseeable users;

k)     failing to exercise reasonable care and skill in the design, assembly, manufacture, fabrication and/or selection of the Mattress;

l)     failing to comply with applicable statutes, codes, regulations and generally recognized safety practices and standards;

m)     such other acts and/or omissions that may be revealed in discovery; and

n)     generally acting in a manner which constitutes negligent, careless, reckless and/or unlawful conduct.

182.    As a direct and proximate result of Defendants' acts and/or omissions, the Plaintiffs and Class members have suffered such harm as has been previously stated herein.

## COUNT XI:  FRAUDULENT CONCEALMENT/FRAUDULENT OMISSION CLASS CLAIM AGAINST ALL DEFENDANTS

183.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 182 as though fully set forth herein.

184.    Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

185.    Defendants knew, or should have known, of the defects described herein since they started selling the Mattress.

186.    Plaintiffs bring this Count against Defendants on behalf of members of the Virginia Consumer Class.

187.    At the time that Defendants concealed and suppressed these material facts, Defendants knew of these material facts and/or upon reasonable inquiry, Defendants would have come to know of these material facts.

188.    The dangerous or defective condition—the presence of fiberglass—existed at the time the Mattresses left Defendants' hands.

189.    Defendants made these material omissions with the intention of reaching Plaintiffs and the Class Members and influencing Plaintiffs' and the Class Members' actions and with the intent that Plaintiffs and Class Members rely on Defendants' deception.

190.    These omissions involved facts that were material because: (1) they are facts that would be relied on by a reasonable person purchasing or retaining a mattress; (2) they concern the type of information on which consumers would be expected to rely and would likely consider to be important in making a decision to purchase a mattress; and (3) they are of the type that a seller and/or manufacturer knows would be likely to induce a reasonable consumer to act, respond, or substantially change his or her behavior.

191.    These facts are also material because they directly impact the value of the Mattresses that were purchased by Plaintiffs and the Class members. Whether a manufacturer's products are safe and reliable, whether those products contain defects, and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiffs and Class Members trusted Defendants not to sell them mattresses that were defective or that violated federal law governing safety.

192.    Defendants deliberately concealed and suppressed these material facts to falsely assure purchasers and consumers that their Mattresses were safe, as represented by Defendants and reasonably expected by consumers.

193.    In choosing to market the Mattress and materials as "natural" and "hypoallergenic," Defendants knew Plaintiffs and Class Members were purchasing the Mattresses on the assumption that the Mattress did not contain unnatural or artificial components like fiberglass.

194.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' images and cost Defendants money. They did so at the expense of Plaintiffs.

195.    Plaintiffs and the Class were unaware of these omitted material facts. Had they been aware of the defects in the Mattresses, and the Defendants' disregard for safety, they would not have purchased, would not have paid as much, or would not have retained their Mattresses for as long a period of time. Plaintiffs did not receive the benefit of their bargain as a result of Defendants' fraudulent concealment.

196.    Plaintiffs and the Class members relied on and were deceived by Defendants' material omissions in purchasing or retaining their Mattresses.

197.    Defendants had a duty to disclose the defects because:

    a.    Defendants had exclusive and/or far superior knowledge and access to the facts related to the defects, and these facts were not: (1) known to Plaintiffs and the Class members; (2) reasonably discoverable by Plaintiffs and the Class members through ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiffs and the Class Members;

b.    Plaintiffs and Class Members trusted and placed confidence in Defendants to inform them of technical and safety issues related to the Mattresses, including issues related to glass fibers;

c.    Defendants were in a position of influence and superiority over Plaintiffs and the Class Members because Defendants designed, manufactured, and/or sold the Mattresses, and Defendants possessed technical expertise and information that Plaintiffs and the Class members lacked; and,

d.    Defendants made incomplete representations about the safety and reliability of the Mattresses, while purposefully withholding material facts from Plaintiffs and the Class members that contradicted these representations.

198.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class members sustained damages. Accordingly, Defendants are liable to the Class for their damages in an amount to be proven at trial, in the categories set forth herein.

199.    Defendants' acts were done wantonly, willfully, maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Class's rights and well-being, and with the aim of enriching Defendants. Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

200.    Plaintiffs are entitled to recover attorneys' fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75, 92 (1999), and its progeny.

## COUNT XII:  FRAUD
## INDIVIDUAL CLAIM AGAINST DEFENDANT OVERSTOCK

201.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 200 as though fully set forth herein.

202.    Defendant Overstock misrepresented the Mattress as "natural" and "hypoallergenic" on its Internet website at the time Plaintiffs purchased their Mattress and at times thereafter.

203.    Fiberglass, by its very nature, is an artificial substance that irritates the lungs, mouth, skin and eyes of the people that come in contact with it.

204.    The inclusion of fiberglass in a mattress labeled as "natural" and "hypoallergenic" renders those representations false because fiberglass is neither.

205.    Defendants are of course aware of the health risks associated with fiberglass, and are likewise aware it is not common knowledge that fiberglass may be contained within one's mattress.

206.    The Plaintiffs reasonably relied on Defendant Overstock's representation when choosing to purchase the Mattress.

207.    Defendant Overstock knew that representing the Mattress as "natural" and "hypoallergenic" was both misleading and inaccurate, but sold the Mattress anyway.

208.    Defendant Overstock made the misrepresentations seeking to take advantage of consumers' general desire to purchase products that are free from artificial components or ingredients.

209.    As of January 24, 2020, Defendant Overstock did not remove or edit its representations that the Mattress was "natural" and "hypoallergenic" on its website.

210.    Thus, Defendant Overstock intentionally attempted to mislead the Plaintiffs and Class members by representing its Mattress as "natural" and "hypoallergenic."

211.   Due to the Plaintiffs' and Class members' reasonable reliance on Defendant Overstock's misrepresentations, the Plaintiffs suffered actual damages, including the severe emotional distress, damage to their property, damage to their home, expenses to refurbish their home, and other damages including, among the other categories discussed herein, inconvenience, aggravation, lost time at work, costs incurred to find alternate housing.

212.   Defendant Overstock's actions, inactions, and omissions were willful and malicious, allowing the Plaintiffs to recover punitive damages as directed by the Court.

213.   Plaintiffs are entitled to recover attorneys' fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75, 92 (1999), and its progeny.

### COUNT XIII: NEGLIGENT INFLICTION OF EMOTIONAL HARM
### INDIVIDUAL CLAIM AGAINST ALL DEFENDANTS

214.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 213 as though fully set forth herein.

215.   The Defendants' negligent actions, inactions, and omissions directly and proximately caused the Plaintiffs to suffer a variety of damages as discussed herein.

216.   As a result of Defendant's negligent labelling of the Mattress as natural and hypoallergenic without a genuine basis for doing so or, alternatively, for not testing the Mattress to confirm its representations were true, the Plaintiffs suffered from emotional distress and suffering that manifested in several physical symptoms.

217.   Plaintiff David Watkins suffered from severe depression and anxiety which physically manifested in vomiting, uncontrollable shaking, uncontrollable crying, and lethargy that caused him to stay in bed for prolonged periods.

218.   Plaintiff Marcia Watkins suffered from severe PTSD and anxiety which physically manifested in uncontrollable shaking, shortness of breath, and hot flashes.

219.    Plaintiffs' children also experienced physical sickness, loss of sleep, medical expenses, and similar injuries to their parents'.

220.    The Defendants' outrageous acts uprooted the Plaintiffs and their family from their home for over five months without even giving them a warning as to the risks associated with buying their Mattress.

221.    Accordingly, the Plaintiffs request damages to compensate them for their mental anguish and suffering, their severe emotional distress, damage to their property, damage to their home, expenses to refurbish their home, and other damages including, among the other categories discussed herein, inconvenience, aggravation, lost time at work, costs incurred to find alternate housing.

## COUNT XIV:  NEGLIGENCE
## INDIVIDUAL CLAIM AGAINST ALL DEFENDANTS

222.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 221 as though fully set forth herein.

223.    The Defendants had a duty to manufacture and sell to the Plaintiffs a product that was of merchantable quality and was fit and safe for its ordinarily uses and the purposes for which it was intended to be used.

224.    The Defendants breached their duty by manufacturing and selling a Mattress that contained unreasonably dangerous conditions, including the use of fiberglass in the form of a sock known to be prone to deterioration, a zippered outer cover and no warning label that it contained hazardous fiberglass.

225.    Because of Defendants' breach of these duties, Plaintiffs suffered injuries.

226.    Defendants' breach of duties caused Plaintiffs to suffer injuries that directly and proximately caused the actual damages that the Plaintiffs suffered as well as their emotional

distress and suffering their severe emotional distress, damage to their property, damage to their home, expenses to refurbish their home, and other damages including, among the other categories discussed herein, inconvenience, aggravation, lost time at work, costs incurred to find alternate housing.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs and Class members demand judgment for actual, statutory, and punitive damages against the Defendants, in addition to attorneys' fees and costs, including expert witness fees; pre and post-judgment interest at the legal rate; injunctive and declaratory relief; and any other relief the Court deems just, equitable, and proper.

**The Plaintiffs demand a trial by jury.**

Respectfully submitted,
**David Watkins and**
**Marcia Watkins**

By_____/s/_____
Leonard A. Bennett, VSB# 37523
Craig C. Marchiando, VSB# 89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
lenbennett@clalegal.com
craig@clalegal.com

Thomas R. Breeden, VSB # 33410
Thomas R. Breeden, P.C., Attorneys and Counselors at Law
10326 Lomond Drive
Manassas, Virginia 20109
Telephone: (703) 361-9277
Facsimile: (703) 337-0441
TRB@TBreedenlaw.com

*Counsel for the Plaintiffs*